# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| ALEXANDER E. JONES | § | Case No. 22-33553 (CML) |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| CHRISTOPHER R. MURRAY, | § | |
| CHAPTER 7 TRUSTEE | § | Adv. No. 25-03421 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIKA WULFF JONES, DAVID R. JONES, | § | |
| INDIVIDUALLY, AND DAVID R. JONES, AS | § | |
| TRUSTEE OF THE ALEXANDER E. JONES | § | A JURY IS DEMANDED |
| DESCENDANT AND BENEFICIARY TRUST | § | |
| Defendants. | § | |

**DAVID R. JONES INDIVIDUALLY ANDAS TRUSTEE FOR THE ALEXANDER E. JONES DESCENDANT AND BENEFICIARY TRUST'S RESPONSE, ANSWER, AFFIRMATIVE DEFENSES SUBJECT THERETO, JURY DEMAND AND NOTICE OF REQUEST FOR WITHDRAWAL OF THE REFERENCE BACK TO THE UNITED STATES DISTRICT COURT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant David R. Jones, Individually ("David Jones") and as Trustee ("Jones-Trustee") of The Alexander E. Jones Descendant and Beneficiary Trust (the "Trust"), files this Response, Answer, Affirmative Defenses Subject Thereto, Jury Demand And Notice of Request for Withdrawal of the Reference Back to the United States District Court, to the Christopher R. Murray (the "Trustee") Complaint to Avoid and Recover Transfers to Insiders Pursuant to 11 U.S.C. § 544, 11 U.S.C. § 547, 11 U.S.C. § 548, 11 U.S.C. § 550 and TEX. BUS. & COM. CODE § 24.001 ET.

SEQ. [Docket #1], and in support thereof would show as follows:

## I.
## PREIMINARY STATEMENT

1. The Chapter 7 Trustee of the Chapter 7 Estate of Alex E. Jones (the "Chapter 7 Trustee") has filed this Complaint seeking to recover from the "Alexander E. Jones Descendant and Beneficiary Trust" (the "Trust") a condominium Unit 6 owned by the Trust. David Jones is sued on in his capacity as Trustee of the Trust.

2. The Chapter 7 Trustee has also filed this Complaint seeking to recover from David Jones individually monies and funds paid to his daughter-in-law Ericka Jones, paid pursuant to marital property agreements. Alex Jones and Ericka Jones are in a divorce proceeding. The Complaint alleges that Alex Jones made approximately $1.4 million in avoidable cash transfers to Ericka Jones during their marriage. At the time of the marriage of Alex and Ericka in 2017 they both entred into premarital agreement in December 2016.

3. Paragraphs numbers 15 through 18 are identical recitations in all three of the contemporaneously filed Adversary Proceedings discussing the Sandy Hook litigation brought in 2018 by the Connecticut Plaintiff and the Texas Plaintiffs.

**Erica Jones Payment Exhibit "A" to the Complaint**

4. Attached to the Complaint are Exhibit "A" (as to Ericka Jones) and Exhibit "B" (as to David Jones) are taken verbatim from the Statement of Financial Affairs ("SOFA") filed by and fully disclosedby Alex Jones as transfers to Insiders.

5. Ericka Jones and Alex had a premarital agreement dated December 14, 2016 ("PMA") prior to their marriage. The PMA had a provision that upon their marriage, both were to sign ratification of the Agreement 30-days after the marriage, that was not executed until May 2022 although all payments required since 2017 had been paid periodically as the PMA required

in addition to payment for their joint monthly expenses and needs that exceeded the PMA required payments.

6.  Neither party to the PMA claims that the failure of the ratification wavied any rights of the parties to full performance.

7.  In this PMA Ericka was to receive a monthly payment beginning at $12,000 per month with yearly increases. At the time of the original Chapter 11 of Alex Jones this amount was approximately $15,000 due per month. This obligation was paid shortly before the bankruptcy for the subsequent year reflected by the entry of $179,764. The increase amount due under the PMA was reconciled and the shortfall paid on November 8, 2022 in the sum of $78,140.00. These funds were directed by Alex Jones to be paid out of the Missouri Trust balance then in the Missouri Trust account. Both of the above obligations were amounts actually due under the MPA.

8.  Exhibit "A" includes both the MPA payments and additional amounts for family and personal living expenses requested by Ericka Jones from time to time and paid from Alex Jones personal income to maintain his wife and children's standard of daily living.

**David Jones Payment  Exhibit "B" to the Complaint**

9.  **Cash Transactions**:  David Jones and Alex Jones, as father and son, operated both the Free Speech Systems.   David and Alex had joint Credit Cards (not in the name of any entity such as PQPR and other entities) but in their individual name, including Wells Fargo and American Express and reflected on Exhibit "B" include Credit Card Reimbursement (totalying $447,814) which were charges made by Alex Jones on the joint credit card and moneys paid to David Jones who paid or had paid (by managing the credit cards) these credit card charges. These charges were paid monthly or more frequently depending on Alex Jones spending needs.

10.   As to the $500,000 entry on Exhibit "B", those funds came from the Missouri Trust

in which David Jones was the Trustee, and on Friday November 4, 2022 withdrew $500,000.00 at the request of Alex Jones to pay retainers needed for filing his Chapter 11 case. On Tuesday November 8, 2022 those funds were paid to Alex Jones for retainers to bankruptc counsel (less the $179,764 to Ericka Jones reflected to Exhibit "A") exhausting these funds.

11. **Property Transactions – Perdanales Hills Ranch**:

12. Alex acquired the Perdanales Hills Ranch in 2006. Alex was not using and did not want to use the ranch and suggested to his father that he take over the land and pay all expenses, taxes, insurance, maintenance, *etc*. he could have the ranch as a gift. This occurred sometime prior to 2018. The valuation by the County taxing authority was approximately $150,000.00 and David Jones has paid all taxes since taking possession.

13. **Vehicles**: As fully disclosed in the Schedules and described in the Global Notes accompanying the Schedules, these three automobils were gifts to his father for the many advances to Alex Jones over the years and as inter-family gifts, three of which were 10, 7 and 5 years before the Alex Jones bankruptcy case.[1] None of these transactions were undisclosed including the recording of title in 2022.

## II.
## AFFIRMATIVE DEFENSES

14. David Jones Trustee and individually assert the statute of limitations

15. David Jones Trustee and individually assert laches.

16. David Jones Trustee and individually assert the statue of repose.

17. David Jones Trustee and individually assert waiver by conduct.

18. David Jones Trustee and individually assert estoppel and quasi-estoppel.

---

[1] There is a mis-description on the vehicles listed on Exhibit "B". The Ford Raptor was actually a 2019 Toyota 4-Runner.

19.     David Jones Trustee and individually assert the defense of abuse of process.

20.     David Jones Trustee and individually assert the defense of ratification.

21.     David Jones Trustee and individually asserts the defense of full or partial payment and offset and accord and satisfaction.

## III.
## SPECIFIC RESPONSES

22.     David Jones Trustee and individually denies the allegations of ¶ 1 of the Complaint.

23.     David Jones Trustee and individually denies the allegations of ¶ 2 of the Complaint as irrelevant and opinion based statements.

24.     David Jones Trustee and individually denies the allegations of ¶ 3 of the Complaint.

25.     David Jones Trustee and individually denies the allegations of ¶ 4 of the Complaint except that the Connecticut were award approximately $1.4 billion judgment now significantly reduced.

26.     David Jones Trustee and individually denies the allegations of ¶5  of the Complaint regarding the hallmarks of fraudulent transfers and denies the transfers were but payment of then current or to be expected living and personal expenses.

27.     David Jones Trustee and individually neither admits or denies the allegations of ¶ 6 of the Complaint regarding the motives of the Chapter 7 Trustee.

28.     David Jones Trustee and individually admits the allegations of ¶ 7  of the Complaint.

29.     David Jones Trustee and individually admits in part the allegations of ¶ 8 of the Complaint regarding the Bankruptcy jurisdiction of this Adversary but asserts that the Bankruptcy Court does not have jurisdiction to conduct a jury trial of these claims and allegations which is reserved to the Article III United States District Court.

30. David Jones Trustee and individually denies the allegations of ¶9 of the Complaint that this is a core proceeding or that this Bankruptcy Court may enter a final order in this case.

31. David Jones Trustee and individually admits the allegations of ¶ 10 of the Complaint regarding proper venue.

32. David Jones Trustee and individually is not required to admit the descriptin of Parties allegations of ¶ 11 through 13 of the Complaint, but denies the allegations that there were fraudulent or preferential transfers as alleged or that he is in that capacity the ultimate receipient of such characterized transfers.

33. David Jones Trustee and individually admits the allegations of ¶ 14 of the Complaint that Alex Jones established the Trust which owns the two condominiums describe therein.

34. David Jones Trustee and individually generally denies the historical and irrelevant information the allegations of ¶ 15 through 19 of the Complaint except that the allegations of Chapter 11filings set out in ¶ 19 is generally correct, three of which pre-dated the start of the litigation described therein.

35. David Jones Trustee and individually admits the allegations of ¶ 20 through 22 of the Complaint.

36. David Jones Trustee and individually denies the allegations of ¶ 23 of the Complaint that the transfers were caused by or participated in by David Jones Trustee and individually.

37. David Jones Trustee and individually neither admits or denies the allegations of ¶¶ 24, 25, 26, 27, 28, 29, and 30 of the Complaint as third party transactions in which David Jones was not involved.

38. David Jones Trustee and individually neither admits nor denies the allegations of ¶ 31 of the Complaint as third party transactions in which David Jones was not involved.

39. David Jones Trustee and individually neither admits nor denies the allegations of ¶ 32 of the Complaint as third party transactions in which David Jones was not involved.

40. David Jones Trustee and individually neither admits nor denies the allegations of ¶ 33 of the Complaint as third party transactions in which David Jones was not involved.

41. David Jones Trustee and individually neither admits nor denies the allegations of ¶ 34 of the Complaint as third party transactions in which David Jones was not involved.

42. David Jones Trustee and individually neither admits nor denies the allegations of ¶ 35 of the Complaint as third party transactions in which David Jones was not involved.

43. David Jones Trustee and individually neither admits nor denies the allegations of ¶ 36 of the Complaint as third party transactions in which David Jones was not involved.

44. David Jones Trustee and individually admits the allegations of ¶ 37 of the Complaint.

45. David Jones Trustee and individually admits the allegations of ¶ 38 of the Complaint but denies the deed or transfer was backdated.

46. David Jones Trustee and individually admits the allegations of ¶ 39 of the Complaint.

47. David Jones Trustee and individually generally admits the allegations of ¶ 40 of the Complaint.

48. David Jones Trustee and individually admits the allegations of ¶ 41 of the Complaint.

49. David Jones Trustee and individually admits the allegations of ¶ 42 of the Complaint but only to the extent of the actual sworn testimony.

50. David Jones Trustee and individually can neither admit or deny the the allegations of ¶ 43 of the Complaint inasmuch as it does not state which "Mr. Jones" is referenced (Alex Jones or David Jones).

51. David Jones Trustee and individually neither admits or denies the allegations of ¶ 44 of the Complaint because Jones does not have a copy and does not recall the transaction.

52. David Jones Trustee and individually neither admits or denies the legal conclusions and statement of ¶ 45 of the Complaint. David Jones generally admits that there was a lien on the Pedernales Ranch in favor of Alex Jones ex-wife.

53. David Jones Trustee and individually neither admits nor denies the allegations of ¶ 46 of the Complaint as third party transactions in which David Jones was not involved.

54. David Jones Trustee and individually neither admits nor denies the allegations of ¶ 47 of the Complaint as third party transactions in which David Jones was not involved.

55. David Jones Trustee and individually denies the allegations of ¶ 48 of the Complaint regarding the quantum of evidnce and generally admits the appraisal district valuations.

56. David Jones Trustee and individually admits the allegations of ¶ 49 of the Complaint

57. David Jones Trustee and individually admits the allegations of ¶50 of the Complaint

58. David Jones Trustee and individually denies the allegations of ¶ 51 of the Complaint.

59. David Jones Trustee and individually denies the allegations and characterization of event of ¶ 52 of the Complaint and would show that an error did occur because the gift transactions had occurred several years prior.

60. David Jones Trustee and individually admits the allegations of ¶ 53 of the Complaint but denies the valuations of the Ford Raptor because it was the valuation for the Toyota 4-Runner.

61. David Jones Trustee and individually denies the allegations of ¶ 54 of the Complaint in as much as "cash" tranactions implies transfers in currency. The transactions were not in currency and were not transferred to David Jones individually but as a mediary to immediately re-direct, as Exhibit A reflects, payments on credit cards in the name of both David Jones and Alex Jones, but only utilized by Alex Jones. The payments were immediately applied to the credit card charges of Alex Jones (from whom the funds were received). David Jones was a mere intermediary. The one exception to repayment of Alex Jones credit card charges was the $500,000 Missouri Trust transferred first to the David Jones personal account and then to Alex Jones the following business day to pay attorney retainers.

62. David Jones Trustee and individually denies the allegations of ¶ 55 of the Complaint.

63. David Jones Trustee and individually denies the allegations of ¶ 56 of the Complaint. The "reimbursements" for for Alex Jones charges on the joint credit card of Alex Jones and David Jones. Only seldom did David Jones incure any charges, and when he did he paid the expense.

64. David Jones Trustee and individually denied the allegations of ¶ 57 of the Complaint. All payments made by Alex Jones to pay his credit card charges were in the normal

and ordinary course of Alex Jones business operations. The use of David Jones was simply because Alex Jones did not pay bills. David Jones handled that function and the accounting reflecting these payments and charges.

65. David Jones Trustee and individually denies the allegations of ¶ 58 of the Complaint

66. David Jones Trustee and individually admits the ownership allegations of ¶ 59 of the Complaint but denies the remainder of ¶ 59.

67. David Jones Trustee and individually admits the allegations of ¶ 60 of the Complaint regarding the transfer, but neither admits nor denies the allegations of ¶ 60 of the Complaint as third party transactions in which David Jones was not involved.

68. David Jones Trustee and individually admits the allegations of ¶ 61 of the Complaint.

69. David Jones Trustee and individually admits the allegations of ¶ 62 of the Complaint.

70. David Jones Trustee and individually admits the allegations of ¶ 63 of the Complaint.

71. David Jones Trustee and individually David Jones Trustee neither admits nor denies the allegations of ¶ 64 of the Complaint as third party transactions in which David Jones was not involved.

72. With respect to the remainder of the allegations by the Trustee reflected in ¶65-¶140, these are legal claims that require no admission or denial. To the extent that one is required, the prior positions stated above are incorporated herein, and the rest of the allegations are hereby denied, conditionally, if response is deemed required for these legal claims and conclusions.

## IV.
## JURY DEMAND

73. David R. Jones, Individually and as Trustee of The Alexander E. Jones Descendant and Beneficiary Trust demand a jury trial of all issues properly tried to a jury.

74. David R. Jones, Individually and as Trustee of The Alexander E. Jones Descendant and Beneficiary Trust request that this case reference be withdrawn to the United States District Court for the Southern District of Texas (Houston Division) to conduct the jury trial demanded, and further requests an order of the District Court referring for all pre-trial matters involving this Adversay Proceeding back to the bankruptcy court, for a report of trial-ready when the bankruptcy court directs.

WHEREFORE, David R. Jones, Individually and as Trustee of The Alexander E. Jones Descendant and Beneficiary Trust prays of for an order and judgment of this Court that the Trustee take nothing in their case, and for such other and further relief to which these parties may be entitled, at law or in equity.

Dated: August 15, 2025

           */s/ ALAN DAUGHTRY*
           Alan Daughtry
           Federal Bar No.: 27989
           State Bar of Texas No.: 00793583
           3355 W. Alabama, Suite 444
           Houston, Texas 77098
           Tel: (281) 300-5202
           Fax: (281) 404-4478
           alan@alandaughtrylaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 15, 2025, a true and correct copy of the foregoing document was served via e-file/e-mail in accordance with the Texas Rules of Civil Procedure:

Joshua W. Wolfshohl (Bar No. 24038592)
Michael B. Dearman (Bar No. 24116270)
Jordan T. Stevens (Bar No. 24106467)
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jwolfshohl@porterhedges.com
mdearman@porterhedges.com
jstevens@porterhedges.com

and

Erin E. Jones (TX 24032478)
JONES MURRAY LLP
602 Sawyer Street, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Fax: (832) 529-3393
erin@jonesmurray.com
**Counsel for Christopher R. Murray, Chapter 7 Trustee**

                                        */s/ Alan Daughtry*
                                        Alan Daughtry